IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RAMON L. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV03-222-C-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| THOMAS BEAUCLAIR, PHIL | ) | |
| FOSTER, DEAN ALLEN, ERIC | ) | |
| MACEACHERN, CARL DAVIS, | ) | |
| DWAYNE SHEDD, DAVID | ) | |
| SARGENT, JOHN HARDISON, | ) | |
| DONNA RILEY, JEFF HENRY, ROD | ) | |
| SCHLIENZ, MICHAEL JOHNSON, | ) | |
| JAY CHRISTENSEN, and Does 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This lawsuit involves the extent to which prison officials must accommodate an inmate's religious exercise in light of legitimate prison security concerns.  The case is currently set for Trial on August 15, 2006, and pending before the Court are the following motions: (1) Defendants' Motion for Summary Judgment on Qualified Immunity (Docket No. 77); and (2) Defendants' Motion for Summary Judgment on all claims (Docket No. 78).

Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument.  Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs and record without oral argument.  D. Id. L. R. 7.1(b).  Accordingly, the Court has determined

that Defendants' request for summary judgment based on a qualified immunity defense is granted. Defendants' request for summary judgment on Plaintiff's religious worship claims under the Religious Land Use and Institutionalized Persons Act is granted in part and denied in part.

The case will proceed to a court trial on Plaintiff's requests for injunctive relief.

# I.

## INTRODUCTION

Plaintiff filed an action under 42 U.S.C. § 1983 action, alleging that prison officials impeded his constitutional right to practice his individualized Cherokee religion. Plaintiff also claims that his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) were violated by Defendants. *Fourth Amended Complaint (Complaint)*.

Plaintiff initially brought his religious exercise claim in a § 1983 claim filed in March of 2000. *Smith v. Spalding, et al.,* CV00-132-C-EJL, Docket No. 4. The Court issued a ruling on Defendants' request for summary judgment in the prior case on March 28, 2001. *Id.*, Docket No. 38. Pursuant to a stipulation, the civil rights complaint in CV00-132-C-EJL was dismissed without prejudice based on Plaintiff's failure to complete the grievance process on all the claims in the complaint. Plaintiff re-filed his Complaint in this action on June 30, 2003, and the Court appointed counsel for Plaintiff.        Plaintiff named the following Defendants in his suit: (1) Tom Beauclair, former Director of the Idaho Department of Correction (IDOC); (2) Phil Foster, former Warden of the Idaho Correctional

**MEMORANDUM DECISION AND ORDER - 2**

Institution in Orofino (ICI-O); (3) D.W. Allen, Deputy Warden at ICI-O; (4) D.W. MacEachern, Deputy Warden at ICI-O; (5) Lieutenant Davis, a correctional officer; (6) Dewayne Shedd, IDOC paralegal, (7) David Sargent, (8) John Hardison; (9) Michael Johnson; (10) Jay Christensen, (11) Donna Riley, (12) Jeff Henry; and (13) Rod Schlienz. It appears that the last seven Defendants are employed at the Idaho Maximum Security Institution (IMSI). *Complaint*, p. 1-2.

Plaintiff seeks a declaratory relief determination that his religious beliefs constitute a religion within the meaning of the U.S. Constitution and RLUIPA and that his right to practice his religion has been burdened by Defendants. *Id*., p. 10-11. He also requests injunctive relief which provides for his religious observance at any IDOC facility, and an award of compensatory and punitive damages. *Id*., p. 10-11.

## II.

### DEFENDANTS' SUMMARY JUDGMENT MOTION

#### A.    Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

**MEMORANDUM DECISION AND ORDER - 3**

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**MEMORANDUM DECISION AND ORDER - 4**

The Ninth Circuit has recently clarified that, in the context of a summary judgment motion, the district court must follow the analytical framework of Rule 56 when defendants asserting qualified immunity have challenged the truth of the facts alleged in the Complaint:

> [I]f a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own.  If in that circumstance the plaintiff fails to produce evidence, the district court is not required (or even allowed) to assume that the challenged factual allegations in the plaintiff's complaint are true.  Similarly, if in that circumstance the plaintiff produces evidence that is not enough, by itself, to create a genuine issue of material fact, the district court is not required (or even allowed) to assume the truth of challenged allegations in the complaint in order to supplement that evidence. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

*Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

### B.  Material Facts

1.  Plaintiff is an inmate in the custody of the IDOC.  He is currently incarcerated at IMSI, the maximum security facility, and was previously incarcerated at ICI-O and ISCI, both medium security facilities.  *Defendants' Statement of Material Facts,* Docket No. 77-3, p. 2.

**MEMORANDUM DECISION AND ORDER - 5**

2.  IDOC facilities receive federal financial assistance.  *Complaint*, p. 2.

3.  During Plaintiff's incarceration, he has been assigned to mainly restrictive housing, including both protective custody and administrative segregation.  *Id.*

4.  Plaintiff's religious beliefs are based on some traditional practices of the Cherokee people, religious practices of family members, and the teaching of Chief Bear and the Bear Clan of Spirit Mountain, Washington.  *Defendants' Statement of Material Facts*, Docket No. 78-3, p. 3; *Plaintiff's Statement of Material Facts*, Docket No. 90, p. 1-2.  Plaintiff believes that his grandmothers were full-blooded Cherokee.  *Complaint*, p. 3.          5.  As part of his religious beliefs, Plaintiff has requested an accommodation for the practices of Sacred Fire, burning and smoking tobacco, smudging, wearing a beard, following an individualized diet, and treating himself medically with herbs.  *Defendants' Statement of Material Facts*, p. 2.

6.  Plaintiff has requested to engage in the practice of praying and worshiping around a Sacred Fire.  He believes that fire is sacred and a central part of traditional Cherokee religious beliefs and practices.  He believes that Sacred Fire should be performed outdoors, in view of natural geographical features such as rivers and mountains, and at least three times per week.  *Complaint*, p. 3; *Defendants' Statement of Material Facts*, p. 2-3.  Plaintiff has described the ritual as making offerings of tobacco, sage, cedar, juniper, and sweet grass to the fire.  *Defendants' Statement of Material Facts*, p. 3.

7.  The Sacred Fire practice lasts approximately one hour, and it is a different ritual than a sweat lodge ceremony.  *Id.*, p. 3.  Other Native American groups are allowed to

**MEMORANDUM DECISION AND ORDER - 6**

practice a sweat lodge ceremony at medium security facilities, and this entails the creation of an outdoor fire. *Plaintiff's Statement of Material Facts*, p. 5-6.

8.   Defendants claim that the traditional practice of Cherokee Sacred Fire requires an individual to go to a ceremonial ground and participate in a group setting.  The Defendants believe that the attendance at the traditional ceremony is considered voluntary in the Cherokee religion and is held less frequently than what Plaintiff is requesting**.** *Defendants' Statement of Material Facts*, Docket No. 78-3, p. 4.  Defendants have not allowed Plaintiff to engage in a Sacred Fire ceremony.  *Id.*

9.   Plaintiff has also requested accommodation for the practice of tobacco smoking and burning, and he believes that traditional Cherokee religious practice includes the ritualistic burning and smoking of tobacco.  *Complaint*, p. 3; *Defendants' Statement of Material Facts*, Docket No. 77-3, p. 3.  He has requested the practice of smoking tobacco in his cell with the use of an air filter.  Beginning in 1996, the IDOC has been a tobacco-free correctional system.  *Id*., p. 6.  Defendants have not allowed Plaintiff to perform the tobacco smoking and burning ceremony in any way at the IDOC facilities.  *Id*.

10.   Plaintiff also wants to perform daily smudging in his cell to cleanse his living area.  Smudging involves the ritualistic burning of ground tobacco, sage, cedar, juniper, and sweet grass in a small bowl.  *Id*, p. 3.  Plaintiff claims that smudging is central to his religious beliefs and practices.  *Complaint*, p. 4.  Defendants have not allowed Plaintiff to perform smudging in his cell at any IDOC facilities.

**MEMORANDUM DECISION AND ORDER - 7**

11. Plaintiff believes that growing and maintaining a beard is central to his religious beliefs and religious exercise. *Defendants' Statement of Material Facts*, p. 4-5. The IDOC's grooming policy allowed inmates to grow their hair to any length, but they were not allowed to have beards. *Plaintiff's Statement of Material Facts*, p. 5. Defendants changed the IDOC grooming policy as of August 1, 2006. *Defendants' Reply in Support of Summary Judgment*, Docket No. 91-1, p. 5, and accompanying *Affidavit of Kevin Kempf*. The new grooming policy allows the inmates to grow beards no longer than one-half inch. *Id.* Plaintiff has requested that Defendants accommodate his beard length between one to six inches. *Complaint,* p. 4.

12. Plaintiff claims that another inmate incarcerated at the maximum security facility is allowed to wear a beard for religious reasons. *Plaintiff's Statement of Material Facts,* p. 3.

13. Plaintiff believes that his religious exercise requires him to follow certain dietary restrictions. For example, his beliefs mandate that he eat only natural foods, free of chemical additives. His diet is based on the belief that he should eat food that is "naturally available" or able to be cultivated. His requested diet also includes three or four pounds of meat per day, including buffalo meat on occasion. *Defendants' Statement of Material Facts*, Docket No. 77-3, p. 4.

14. The IDOC provides a mainline diet, a healthy choice diet, a non-pork diet; a lacto-ovo vegetarian diet, and a strict vegan diet. The diets are not specifically designated as

**MEMORANDUM DECISION AND ORDER - 8**

religious diets.  *Affidavit of Katie Hall*, Docket No. 78-20, p. 6.  Plaintiff believes that the non-pork diets are offered as a religious accommodation for certain inmates.  *Complaint*, p. 4.

15.  Plaintiff also requests that he be allowed to treat his medical conditions with natural remedies and herbs.  He claims that it violates his religious beliefs to take pharmaceutical medications.  *Defendants Statement of Material Facts*, p. 4; *Complaint*, p. 5-6.  Plaintiff has not been allowed to use natural remedies and herbs for his medical conditions.

16.  In Plaintiff's previous religious worship case, CV00-132-C-EJL, the Court denied Defendants' motion for summary judgment, requesting dismissal of the First and Fourteenth Amendment claims.  Defendants were informed that "Plaintiff has created a genuine issue of material fact as to whether he has a sincere desire to learn about the Cherokee religion and practice its beliefs."  Docket No. 38, p. 13-14 (issued March 28, 2001).  The Court's opinion also stated that "[w]hile some of Plaintiff's requests present obvious security concerns, such as his request to be able to smoke tobacco-free kinnick-kinnick in his cell whenever he wants to, other requests seem more innocuous."  *Id*., p. 13.  Plaintiff's case was dismissed without prejudice to re-filing it for failure to exhaust the prison grievance process.

17.  After Plaintiff's previous First Amendment lawsuit was dismissed, the Ninth Circuit Court of Appeals upheld the constitutionality of RLUIPA in *Mayweathers v. Newland,* 314 F.3d 1062, 1070 (9th Cir. 2002).

**MEMORANDUM DECISION AND ORDER - 9**

18.   After *Mayweathers* upheld the constitutionality of RLUIPA, this Court issued an opinion in *Goodrick v. Spalding, et al.,*, CV01-190-C-EJL*,* construing the RLUIPA to provide protection to an inmate's non-traditional Gnostic Catholic religion.  *See* Docket No. 137 (dated March 10, 2003, holding that the IDOC Defendants' had violated RLUIPA and enjoining them from enforcing a ban on Plaintiff's use of religious prayer oils).

19.   Plaintiff re-filed his lawsuit, CV03-222-C-EJL, on June 2, 2003.  Docket No. 3. An attorney was appointed to represent Plaintiff, and the attorney filed the Second Amended Complaint on Plaintiff's behalf, which included a claim under RLUIPA.  Docket No. 29.


### C.  Standard of Law for RLUIPA Claim

The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person  . . .  is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C.   § 2000 cc- 1(a).   The RLUIPA applies to entities receiving federal financial assistance.  *Id.* at (b) (1).

**MEMORANDUM DECISION AND ORDER - 10**

Prior to the enactment of RLUIPA, Congress passed the Religious Freedom Restoration Act (RFRA).[1]  Under the RFRA, courts defined the burden on an inmate's religion to be the interference with a tenet or belief that was central to the religion's doctrine. *See* Heather Davis, *Inmates' Religious Rights:  Deference to Religious Leaders and Accommodation of Individualized Religious Beliefs,* 64 Alb. L. Rev. 773, 794 (2000) (summarizing the case law regarding the substantial burden test under the RFRA).  This requirement was expressly changed under RLUIPA because religious exercise is now defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C.  § 2000 cc- 5(7)(a).  Thus, "[i]n determining whether a prisoner's religious freedom is substantially burdened, . . . the question is not whether a particular practice is required by the prisoner's faith, but rather whether 'the practices in question are important to the votaries of the religion.'"  *Charles v. Herhagen*, 220 F. Supp. 2d 937, 947 (W.D. Wis. 2002), *affirmed by* 348 F.3d 601 (7th Cir. 2003).

The United States Supreme Court recently upheld the constitutionality of RLUIPA. *See Cutter v. Wilkinson*, 125 S. Ct. 2113, 2117 (2005)(the statute's increased protection for inmates' religious rights did not violate the Establishment Clause).  Shortly thereafter, the Ninth Circuit Court of Appeals reversed a district court's denial of a request for preliminary injunctive relief on an inmate's claim under RLUIPA.  *See Warsoldier v.*

---

[1]  The RFRA was declared unconstitutional in *City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S. Ct. 2157 (1997) (invalidating the RFRA as it applied to the states because Congress had exceeded its powers under the Fourteenth Amendment's enforcement clause).  Congress immediately responded to the decision in *City of Boerne v. Flores* by enacting RLUIPA.

**MEMORANDUM DECISION AND ORDER - 11**

*Woodford*, 418 F.3d 989, 1002 (9th Cir. 2005).  The Court of Appeals determined that the inmate had established a likelihood of success on his claim that the prison grooming policy at the California Department of Correction (CDC) violated his rights under RLUIPA.  The grooming policy prohibited inmates from growing their hair longer than three inches, and the policy contained no religious belief exemption.  The Plaintiff, a Native American, challenged the grooming policy as violative of his religious beliefs regarding his hair length.  *Id*. at 991-92.

The Court of Appeals determined that the CDC's hair grooming policy placed a substantial burden on the Plaintiff, defining the burden as "oppressive to a significantly great extent."  *Id*. p. 995 (internal quotation marks omitted) (citing *San Jose Christian Coll. v.City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)).

The Court of Appeals defined the issue before it as whether the prison "grooming policy [was] the least restrictive alternative available to CDC to reach its compelling interest" of prison security.  *Id*. at 998.  The Court held that the CDC had not met its burden of showing that the blanket grooming policy was the least restrictive alternative available for maintaining prison security.  *Id*. at 1001.  One of the reasons the CDC had failed to meet its burden was that the inmate was being held in a minimum security facility, and "the least restrictive means in a maximum security prison may not be identical to what is required for a minimum security facility."  *Id*. at 999.  The Court also stated that

> Moreover, even outside the context of a minimum security facility, CDC cannot meet its burden to prove least restrictive means unless it

**MEMORANDUM DECISION AND ORDER - 12**

> demonstrates that it has actually considered and rejected the efficacy of
> less restrictive measures before adopting the challenged practice.

*Id.*

The Court of Appeals also informed the CDC that the Federal Bureau of Prisons allowed religious exemptions in its grooming policy and did not vary the policy according to a federal prison's security level. *Id.* at 999 (citing *Cutter v. Wilkinson*, 125 S. Ct. at 2124). The Court also stated that "the failure of a defendant to explain why another institution with the same compelling interests was able to accommodate the same religious practices may constitute a failure to establish that the defendant was using the least restrictive means." *Id.* at 1000.

The Supreme Court stated in the *Cutter v. Wilkinson* case that RLUIPA does not elevate the "accommodation of religious observances over an institution's need to maintain order and safety." 125 S. Ct. at 2122. "Should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Id.* at 2125.

Based on the foregoing standards, Plaintiff's requests for religious accommodation must not override other significant interests within a prison setting. In the words of the Supreme Court -- "context matters." *Id.* at 2123.

**D.  Discussion of Plaintiff's Accommodation Requests**

Based on the record before the Court, it does not appear that a dispute exists as to the type of requests Plaintiff has made for religious accommodations.  It is also obvious from the record that the IDOC Defendants have not questioned Plaintiff's sincerity in his religious beliefs, but neither have they been willing to accommodate any of the requests.  Therefore, the Court will proceed to discuss the religious accommodation requests, and issue a declaratory ruling on whether the failure to accommodate the requests amounts to a violation of RLUIPA.  *Kolender v. Lawson,* 461 U.S. 352, 355 n.3 (1983)(where a credible threat exists that a party will be subjected to similar violations in the future, the party may obtain declaratory relief).

As part of his religious beliefs, Plaintiff has requested an accommodation for the practices of Sacred Fire, burning and smoking tobacco, smudging, wearing a beard, following an individualized diet, and treating himself medically with herbs.  *Defendants' Statement of Material Facts*, p. 2.

### Sacred Fire, Beard Length, and Herbs

Defendants claim that Plaintiff's requests to conduct a Sacred Fire ceremony, to wear a beard between one and six inches long, and to take herbs rather than pharmaceutical medicine do not pose a burden on his religious exercise.  Defendants claim that because these requests for religious observance do not fit squarely within the traditional Cherokee religious traditions, it cannot be a burden on Plaintiff's religious exercise to deny him these

observances.  Defendants cite to statements from a member of a Cherokee Tribe in support of this argument.  Docket No. 78-3, p. 3-5.

The difficulty with this argument is that the Supreme Court has previously determined that an inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."  *Cruz v. Beto*, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081 (1972).  Even though Plaintiff's religious exercise does not comport with all of the traditional Cherokee religious traditions, he maintains that his religious worship requests are incidents of his own version of a Native American religion.  Contrary to Defendants assertion, the individualized nature of Plaintiff's religious worship requests is not fatal to his claim that Defendants are imposing a significant restriction on his religious exercise. [2]

For example, Defendants claim that the Sacred Fire ceremony needs to be conducted with other Cherokee Tribe members at a large gathering, and is held only a few times per

_____

[2] In Plaintiff's previous religious accommodation lawsuit, CV00-132-C-EJL, the Court outlined an extensive examination of cases involving religious exercise claims.  *See* Docket No. 38, therein.  Rather than including the discussion in Docket No. 38 in its entirety, the Court incorporates it by reference into the present outline of legal standards, pertaining to unique religious worship requests and minority religions.  *See, e.g., Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 713-14 (1981) ("religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.").  The discussion of First Amendment cases is relevant to the issues presented under Plaintiff's RLUIPA claim because the statute provides that it is to be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).

**MEMORANDUM DECISION AND ORDER - 15**

year.  In contrast, Plaintiff requests the right to conduct a Sacred Fire ceremony three times per week by himself.  Defendants argue that Plaintiff's desire to participate in  in a Sacred Fire ceremony need not be accommodated because it is not performed in a traditional Cherokee way.  Defendants then assert that Plaintiff's request presents safety and security issues because inmates cannot build fires.

The complete refusal to accommodate the request for a Sacred Fire ceremony violates RLUIPA, and there is nothing in the record indicating that Defendants discussed the possible accommodation of the request and determined that it was too dangerous to ever allow the ceremony.  Defendants also fail to explain why there is a religious accommodation for other Native American inmates who participate in a sweat lodge ceremony, using an outdoor fire, but there is no safe accommodation for Plaintiff's Sacred Fire request.

Prior to the entry of any injunctive order on the request, Defendants will be allowed to provide evidence on the manner in which the Sacred Fire ceremony will necessarily be restricted and monitored in order to safely accommodate the request.  Plaintiff's request for the Sacred Fire ceremony must be balanced against the factors set forth in *Cutter v. Wilkinson*, as set forth above.

Plaintiff requested a beard with a length of between one to six inches, and Defendants claim that Plaintiff's request for a beard is now moot because the grooming policy allows a

**MEMORANDUM DECISION AND ORDER - 16**

one-half inch beard length for all inmates. [3]  The Court disagrees with this argument because Plaintiff's request is to maintain a slightly longer beard than the one allowed in the grooming policy, and the grooming policy does not contain a religious exemption.  The Court issues a declaratory ruling that the failure to provide a religious exemption for Plaintiff's beard in the IDOC grooming policy violates RLUIPA.  Plaintiff's request for a beard length between one to six inches must be balanced against the prison's security concerns as set forth in the *Cutter* opinion.  Therefore, Defendants will be allowed to present evidence about these factors on Plaintiff's injunctive relief requests for growing and maintaining a beard of a specific length.

Plaintiff also requested a religious accommodation for the use of medicinal herbs as part of his religious beliefs.  He maintains that he must refrain from taking pharmaceutical medicine as part of his beliefs, and Defendants' argument against the accommodation request is that Plaintiff named the wrong Defendant in the lawsuit.  There is no mention about the security issues that would prohibit such an accommodation.  Therefore, the Court will issue a declaratory ruling that the complete prohibition on Plaintiff's use of medicinal herbs as an alternative to prescribed medication is a violation of RLUIPA.

Although the IDOC contracts with a private medical provider to supply prescription medications to inmates, Plaintiff's request, as the Court understands it, is to be able to

---

[3] Defendants previously argued that Defendants' religious beard request is barred by a "shaving contract" into which he allegedly entered prior to the enactment of RLUIPA. Docket No. 78-2, p. 13.   The Court finds no merit in this argument.

**MEMORANDUM DECISION AND ORDER - 17**

purchase herbs and use them in lieu of the medicine he has been taking for various medical conditions. It may be that the herbs Plaintiff is requesting pose a danger to other inmates at the institution, but the storage of the herbs can be addressed through less restrictive means than a complete prohibition on their use.

Therefore, Plaintiff's request for injunctive relief on the use of medicinal herbs will be determined in light of the security concerns posed by allowing the herbs into a prison setting. Defendants will be allowed to present evidence about the necessary restrictions on the use of the herbs.

**Tobacco Smoking, Smudging, and Diet**

Plaintiff also requested religious accommodation for burning and smoking tobacco, smudging, and following an individualized diet. Based on the record before it, the Court has determined that these requests fail as a matter of law. The Court previously informed Plaintiff that his request to smoke and burn tobacco in his cell and perform a smudging ceremony indoors presented obvious security concerns. In Defendants' Reply Brief, Docket No. 92, the reasons for banning tobacco from IDOC institutions are set forth, and the brief also cites to the case of *Roles v. Townsend*, 138 Idaho 412, 64 P.3d 338 (Ct. Ap. 2003) in which an inmate's religious challenge to the smoking ban was denied.

The IDOC Defendants have met their burden of showing the legitimate penological reason for burdening Plaintiff's request to smoke and burn tobacco in his cell. There are other significant interests in the IDOC facilities that override Plaintiff's request, such as the

**MEMORANDUM DECISION AND ORDER - 18**

health effects on other inmates of allowing Plaintiff to smoke and burn tobacco in his cell. *Cutter v. Wilkinson*, 125 S.Ct. at 2122 (courts must consider not only security and safety, but the burden the accommodation places on third parties). Therefore, even under the stricter standard of RLUIPA, smoking and burning tobacco in an inmate's cell will not be accommodated.

Plaintiff's request to perform daily smudging in his cell fails for the same reasons. Defendants have presented significant interests in the security and safety of other inmates which override Plaintiff's requested religious accommodation. Plaintiff's request to perform daily smudging in his cell fails as a matter of law under RLUIPA.

Finally, Plaintiff's request for an individualized diet also fails under RLUIPA. Plaintiff has not clearly established that the request for an individualized diet of natural foods and a large quantity of meat is actually linked to his religious beliefs. There is no record that there is a dietary law to which Plaintiff believes he must adhere in his individualized Cherokee beliefs. *See Defendants' Statement of Material Facts*, Docket No. 77-3, p. 4. Plaintiff has requested chemical free food, natural food, and food that can be cultivated in the way the Creator has provided. *Smith Deposition Transcript*, p. 199, 133, 123. Plaintiff also requested that his diet be supplemented with between three to six pounds of meat per day, including buffalo meat on occasion. *Id*, p. 128-29. He also requested larger portions of food than those currently offered by the IDOC, but he asserts that he is prohibited from

**MEMORANDUM DECISION AND ORDER - 19**

eating pasta, rice, white potatoes, celery, carrots, soy beans, tuna, citrus fruits, and apples. *Id*., p. 119, 121-22.

The failure to articulate an actual dietary law or basis for his individualized religious beliefs, shows that the current diet offered to Plaintiff does not create a significant burden on his religious exercise. There is nothing in the record showing that he is being compelled to violate his religious beliefs under the current diet he is receiving, even if he is required to omit certain foods that are served to him. It would place a substantial burden on the IDOC employees to accommodate the array of dietary restrictions and requests Plaintiff has made, and it would open the door to similar requests from inmates who are seeking a specialized diet. Accordingly, Plaintiff's claim for an individualized diet fails as a matter of law under RLUIPA.

In addition to Plaintiff's RLUIPA claims, he included claims under the First and Fourteenth Amendments. Because the heightened scrutiny afforded under RLUIPA is greater than the protection under the First and Fourteenth Amendment claims, the Court will not rule on these claims. *See Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 326 F. Supp. 2d 1140, 1162 (E.D. Cal. 2003), *affirmed by* -- F.3d –, 2006 WL 2129737 (9th Cir. 2006)(deciding that because Plaintiff's claims succeed under RLUIPA, there was no need to consider whether they succeed under the lower level of scrutiny); *see also Communist Party of Indiana v. Whitcomb*, 414 U.S. 441, 452 (1974)(constitutional issues need not be decided where narrower grounds exist for according relief).

**MEMORANDUM DECISION AND ORDER - 20**

## III.

## DEFENDANTS' QUALIFIED IMMUNITY

Defendants also filed a motion, requesting that the Court determine the issue of whether the individual Defendants are liable for compensatory damages under RLUIPA. They assert that it has not been clearly established in the Ninth Circuit that Plaintiff is entitled to compensatory damages under the statute.  Plaintiff concedes that the law is unclear on the damages issue in his response to Defendants' request for summary judgment.

RLUIPA provides that "a person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2(a).  In a district court opinion to which the Court previously cited, Senior District Judge Karlton, determined that a Plaintiff in a land use case brought under RLUIPA was not entitled to compensatory damages because "the issue of whether RLUIPA allows the recovery of damages is an open question."  *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 326 F. Supp. 2d at 1162. [4]  Judge Karlton awarded nominal damages to the Plaintiff under the theory that there was an infringement of the Plaintiff's religious rights under the statute.  *Id.* (citing *Cary v. Piphus*, 435 U.S. 247 (1978)).  Based on the lack of case law on

---

[4]  Compare this case with *Williams v. Bitner*, 285 F. Supp. 2d 593, 602 (M.D. Penn. 2003), *affirmed by* – F.3d –, 2006 WL 2052179 (3rd Cir. (Pa.)) (upholding the constitutionality of RLUIPA on the basis that it does not mandate a damages award, thereby running afoul of the Eleventh Amendment's immunity grant to states); and *Shidler v. Moore*, 409 F. Supp. 2d 1060, 1066 (N.D. Ind. 2006)(stating that at the initial review stage of a prisoner complaint brought under RLUIPA, the plaintiff had stated a claim for "monetary damages" for the violation).

**MEMORANDUM DECISION AND ORDER - 21**

this point, the Court is inclined to follow Judge Karlton's lead and deny Plaintiff's request for compensatory damages on the RLUIPA claim.

Defendants also assert a qualified immunity defense as to all claims Plaintiff brought under RLUIPA.  The Supreme Court has instructed that rulings on the qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," inasmuch as the defense is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  Although Defendants have asserted the qualified immunity defense on the eve of trial, the Court is willing to examine the issue.

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights.  *Id.*  True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Qualified immunity "does not bar actions for  declaratory or injunctive relief."

**MEMORANDUM DECISION AND ORDER - 22**

*Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir.1989) (citing *Harlow*).

The threshold question in considering the qualified immunity defense is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  In the case before the Court, the qualified immunity defense applies to a violation under RLUIPA.  If, viewing the alleged injuries in a light most favorable to the plaintiff, the Court finds that a plaintiff's right appears to have been violated, it proceeds to the next step, which is to inquire whether the right was clearly established.  *Id*.

The Court has previously determined that Plaintiff established his right under RLUIPA to a religious accommodation for his free exercise of religion on the requests for Sacred Fire, a religious beard, and the use of medicinal herbs.  The Court next examines whether the right to this religious accommodation was clearly established.

To determine whether the right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act.  *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citation omitted).  In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established.  *Id.* (citation omitted).

**MEMORANDUM DECISION AND ORDER - 23**

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201.   For the law to be clearly established, "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent" to the official.  *Id*.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. at 194-95 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

When a § 1983 defendant adequately sets forth a request for summary judgment based on immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint.  *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

The Court defers to the reasoning in the qualified immunity analysis in *Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003), where, though the facts were particularly grievous, the Defendants were afforded qualified immunity because there was no case law addressing the issue of the proper conditions of confinement for disabled individuals under a due process theory.  *Id*. at 1082.  The Ninth Circuit court noted that it had decided the issues of disabled

**MEMORANDUM DECISION AND ORDER - 24**

inmates' rights in the context of Eighth Amendment and ADA claims, but the court had "never discussed disabled inmates' rights in the context of claims involving protected liberty interests." *Id*. The court concluded: "Although we note that the prison failed miserably in providing adequate facilities for the disabled Serrano during his spell in solitary confinement, we cannot hold Francis liable for a constitutional violation, the contours of which had never before been fleshed out." *Id*.; *see also Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004)(holding that the second prong of the *Saucier* inquiry operates at a high level of specificity; it is insufficient that the broad principle underlying a right is well-established).

Defendants were on notice in the case of *Goodrick v. Spalding, et al.,* CV01-190-C-EJL*,* that an inmate's religious accommodation request to use religious prayer oils in a non-traditional religion violated RLUIPA. *See* Docket No. 137 (dated March 10, 2003, holding that the IDOC Defendants' had violated RLUIPA and enjoining them from enforcing a ban on Plaintiff's use of religious prayer oils). Plaintiff also cites to a few reported district court decisions on religious accommodation that would appear to notify Defendants about the larger general principle of religious accommodation under RLUIPA. Therefore, Plaintiff's argument -- that a common sense application of these cases to Plaintiff's religious accommodation requests should have resulted in at least some of the requests being granted -- is an appealing one.

The difficulty for the Court is the security concerns that IDOC officials claim were the catalyst behind the failure to provide religious accommodation to Plaintiff. They also cite

**MEMORANDUM DECISION AND ORDER - 25**

the fear of a ripple effect throughout the prison in allowing one inmate to have the religious accommodations Plaintiff was seeking.  This latter factor may cause the IDOC officials to venture cautiously into allowing an inmate to participate in religious activities that are part of a non-traditional and individualized practice of the Cherokee religion.  Based on the fact that Plaintiff's accommodation requests also posed significant security concerns, it does not appear that within the context of this case, it was unreasonable to wait for a judicial determination about the parameters of accommodating religious exercise based on Plaintiff's individualized religious beliefs.

Accordingly, the Court will grant Defendants' motion for qualified immunity on Plaintiff's damages claims arising out of RLUIPA and the First and Fourteenth Amendments. This ruling should not be construed as a license to ignore future religious accommodation requests from inmates with individualized religious beliefs.  There is a growing body of case law on religious accommodation, in addition to the cases decided in the District of Idaho, and the Court anticipates that Defendants will take the religious accommodation requests seriously and document their efforts to find the least restrictive means to protect the compelling interests at stake in a correctional setting.  In other words, the Court is hopeful that Defendants will be able to resolve these issues before the inmate files a claim under RLUIPA in federal court.

**MEMORANDUM DECISION AND ORDER - 26**

Based on the foregoing, Plaintiff's request for injunctive relief on the religious accommodation for Sacred Fire, a beard, and medicinal herbs will be argued only before the Court.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment on Qualified Immunity (Docket No. 77) is GRANTED as set forth above.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Summary Judgment on all claims (Docket No. 78) is GRANTED in part and DENIED in part as set forth above.

IT IS FURTHER HEREBY ORDERED that Plaintiff's counsel shall prepare an order containing the Court's ruling on the declaratory relief requests as set forth above.

DATED:  **August 11, 2006**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 27**