IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAMON L. SMITH, | )<br>) |
| Plaintiff, | ) Case No. CV03-222-C-EJL<br>) |
| vs. | ) **MEMORANDUM ORDER**<br>) |
| THOMAS BEAUCLAIR, PHIL FOSTER, DEAN ALLEN, ERIC MACEACHERN, CARL DAVIS, DWAYNE SHEDD, DAVID SARGENT, JOHN HARDISON, DONNA RILEY, JEFF HENRY, ROD SCHLIENZ, MICHAEL JOHNSON, JAY CHRISTENSEN, and Does 1-5, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Pending before the Court in this case are Plaintiff's Motion for Attorneys' Fees and Expenses, *Docket No. 126,* and Defendants' Bill of Costs, *Docket No. 125*. The Court has previously ruled that Plaintiff's counsel has standing to file the motion for attorney's fees on behalf of the Personal Representative for Plaintiff and that the claim for attorney's fees did not abate upon the death of Plaintiff. *Docket No. 144*.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional

**ORDER** 1

process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## Background

Plaintiff was an inmate in the custody of the Idaho Department of Correction ("IDOC"), starting in December 1997 and continuing until his death on September 19, 2006. He sued IDOC officials and correctional officers for their refusal to accommodate his religious worship which included an individualized practice of Cherokee religious beliefs and practices. The Court appointed the law firm of Givens Pursley as *pro bono* counsel to represent Plaintiff in his civil rights claim.[1] In the Fourth Amended Complaint, Plaintiff asserted claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and 42 U.S.C. § 1983. *Docket No. 69.* The Complaint requested a judgment for Plaintiff on his religious accommodation request, a declaration that his religious beliefs constitute a religion, and a declaration that the deprivation of his religious worship constituted a violation of the First Amendment and RLUIPA. *Docket No. 69*, p. 9. The Complaint also requested injunctive relief and an attorneys' fees award. *Id.*, p. 10.

Specifically, the Fourth Amended Complaint set forth the following claims: Count I: denial of free exercise of religion in violation of § 1983 for sacred fire, tobacco burning and smudging, permission to grow and maintain a beard, dietary accommodations, and

---

[1] The fact that Givens Pursley was acting in *pro bono* capacity has no bearing on the Court's ability to award attorneys fees to Plaintiff pursuant to 42 U.S.C. § 1988. *Dennis v. Chang*, 611 F.2d 1302, 1304-05 n.4 (9th Cir. 1980).

**ORDER  2**

religious literature; Count II: equal protection for sacred fire, tobacco burning and smudging, permission to grow and maintain a beard, dietary accommodations, and religious literature; Count III: (no count 3 in complaint); Count IV: violation of RLUIPA for sacred fire, tobacco burning and smudging, permission to grow and maintain a beard, dietary accommodations, and religious literature; a request for punitive damages and attorneys fees.

The Court entered an interlocutory declaratory ruling, stating that the complete failure to accommodate Plaintiff's request to participate in a Sacred Fire ceremony was a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Docket No. 98*, p. 16. The Court also issued a declaratory ruling that the failure to provide a religious exemption for Plaintiff's beard and the refusal to allow Plaintiff to purchase medicinal herbs, violated his rights under RLUIPA. *Docket No. 98*. In the same Order, the Court granted Defendants' summary judgment motion on Plaintiff's requests to burn tobacco and to perform daily smudging in his cell since smudging also requires the burning of tobacco, sage, cedar, juniper and sweet grass in a small bowl. Plaintiff later clarified that he could only participate in the sacred fire ceremony through the burning of tobacco in his cell, and the Court issued an amended ruling, granting Defendants' request for summary judgment on Plaintiff's request for a sacred fire ceremony. *Docket No. 117*. The August 11, 2006 Order also granted Defendants' motion for summary judgment on the Plaintiff's claims for compensatory damages. *Docket No. 98.*

In a separate Order on August 23, 2006, the Court granted summary judgment in

**ORDER  3**

favor of Defendants on the issue of Plaintiff's generalized request for religious literature for Plaintiff. *Docket No. 117*, pp. 4-5.

After the Court's ruling on Plaintiff's religious worship requests, the parties entered into a Settlement Agreement. A Judgment was entered on September 18, 2006, and the following day, September 19, 2006, Plaintiff died at the prison. Plaintiff's counsel informed the Court on September 13, 2007 that Givens Pursley had been appointed as Plaintiff's personal representative. *Docket No. 138* (attaching the Letters of Administration, appointing the law firm as the Personal Representative of Ramon Smith's estate). Defendants requested additional time within which to file a response to the Motion for Substitution of Party, and the response was filed shortly thereafter. In *Docket No. 144,* the Court ordered that Plaintiff's motion for Substitution of Party (*Docket No. 138*) be granted and Defendants' Motion for Extension of Time to File Response (*Docket No. 140*) be granted and also it was ordered that both parties were to attend a judicially supervised settlement conference to settle the matter of attorneys fees. The parties were unable to agree upon settlement. The Court will not address Defendants renewed legal arguments that Plaintiff's estate cannot bring this action for attorneys fees that were dealt with by the Court in its Order dated September 27, 2007, *Docket No. 139*.

Plaintiff claims he was a prevailing party and is therefore entitled to attorneys's fees under 42 U. S. C. § 1988 in the amount of $115,829, but acknowledges that the fees should be reduced based on the cap for hourly rates under the Prison Litigation Reform Act to $39,687. Defendants argue that Plaintiff was not a prevailing party since both

**ORDER  4**

sides were successful on certain claims and that fees are discretionary and should not be granted in this case. Defendants seek reimbursement of their costs related to the action in the amount of $3,293.63.

**Standard of Review for Attorneys Fees**

**1. Attorneys Fees Pursuant to § 1988**

Title 42 U.S.C. § 1988 authorizes an award of attorney's fees as part of costs in civil rights actions brought under 42 U.S.C. § 1983. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing H.R.Rep. No. 94-1558, p. 1 (1976)).

Courts have "considerable discretion" over fee awards under § 1988. *Corder v. Gates*, 947 F.2d 374, 380 (9th Cir. 1991). However, courts "must clearly articulate sound reasons in support of their fee awards." *Id.* In its written decision, a court should provide "a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

"A plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988." *Id.* at 433. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because plaintiff did not prevail on all claims. *Id.* at 435. However, where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained. *Id.* 434-436.

**ORDER  5**

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith. . . . Again, the most critical factor is the degree of success obtained.

*Id.* at 436.

Both sides argue that they are the prevailing party in this case. Each has set forth a fairly compelling argument, supported by some case law. Having considered the guidance provided by the United States Supreme Court on prevailing party status, and having considered the unusual circumstances of this case, the Court finds and thus concludes that Plaintiff is a prevailing party with only partial or limited success.

While prevailing party status once encompassed nearly any type of success resulting from a complaint, *Hensley* and later cases made it more difficult to achieve prevailing party status. In *Hensley*, the Supreme Court determined that plaintiffs are considered prevailing parties in a lawsuit if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' " *Id*. at 433. In *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 792 (1989), the Supreme Court clarified that, in order to be deemed the prevailing party, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." In this respect, a court is free to use its discretion to decide that "a purely technical or *de minimis* victory" is "so insignificant . . . as to be insufficient to support prevailing party status." *Id*.

In the cases following *Hensley*, the United States Supreme Court reiterated that

**ORDER  6**

"liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Stated another way, "[i]n the absence of relief, a party cannot meet the threshold requirement of § 1988 that he prevail, and in consequence he is not entitled to an award of attorney's fees." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).

      Turning to the specifics of this case, the Court finds there were basically five claims by Plaintiff: ability to burn tobacco in his cell for a sacred fire ceremony, smudging or other religious reason; beard length; dietary accommodations; medicinal herb access; and religious literature request. The Court finds Plaintiff Ramon Smith prevailed on two of the five claims and these two claims were legally significant constitutional claims and the rulings did change the legal relationship between Plaintiff and the Defendants. While it is true Plaintiff was not successful on his claim for compensatory damages, Plaintiff was successful on in his injunctive relief request on the two claims. Accordingly, the Court finds awarding fees on the two claims Plaintiff prevailed on (beard length and access to medicinal herbs) is appropriate under the applicable case law. Plaintiff's estate is legally entitled to the attorneys fees award even though Plaintiff did not live to enjoy the fruits of his successful litigation. Other prisoners can benefit from the changes in prison polices that resulted based on Plaintiff's lawsuit.

**ORDER  7**

## 2. Calculation of a Reasonable Fee Award

To calculate a reasonable fee award, the Court is required to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley* at 433. This calculation, called the "lodestar" figure, provides an objective basis on which to make an initial estimate of the value of a lawyer's services. S*ee Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The lodestar figure may be adjusted up or down based on a variety of other items factoring into the reasonableness of the fee award.

The lodestar figure is presumed to represent a reasonable fee, *Blum v. Stenson*, 465 U.S. 886, 897 (1984), but it may be adjusted in consideration of the following twelve factors (known as the *Kerr* factors in the Ninth Circuit):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5, 94-95 (1989) (explaining continuing application of the twelve factors after the lodestar method was adopted); *see Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cr. 1975) (defining the method that was used to determine attorney's fees prior to the lodestar method). Many of the *Kerr* factors will already have been considered in the initial lodestar calculation. *See Hensley*, 461

**ORDER 8**

U.S. at 434.

The Court may also reduce the award for inadequate documentation of hours and for hours "that were not 'reasonably expended,'" including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, at 433-34. Finally, the Court may adjust the fee if only limited success was obtained, because "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Id*. at 440.

The "party opposing the fee application carries the burden of rebuttal" and must submit "evidence challenging the accuracy and reasonableness of hours charged[] or factual assertions made in affidavits submitted by the prevailing party." *Lozeau v. Lake County, Montana*, 98 F. Supp. 2d 1157, 1169 (D. Montana 2000).

In applying the above case law, the Court finds the reasonable attorney's fees in this case as follows:

**ORDER  9**

### 3. Hourly Rate

The lead attorney in this case, Mr. Brad Sneed, was a senior associate at Givens Pursley. His hourly rates ranged from $145 to $170, however, pursuant to the Prison Litigation Reform Act ("PLRA") at 42 U. S. C. § 1997e(d)(3), the hourly rate allowed for § 1988 fees cannot exceed 150% of the hourly rate established under 18 U. S. C. § 3006A for payment of court-appointed counsel (Criminal Justice Act "CJA" rates). Mr. Sneed sets forth the applicable CJA rate for in-court time the rate would be $90 ($60 times 150%) and out-of-court time would be $60 ($40 times 150%). *Docket No. 126*.

The Court agrees the applicable hourly rate is capped at 150% of the going CJA rates, but Mr. Sneed has not correctly cited the applicable and effective CJA rates for calculating the hourly cap under the PLRA. The Court does not use the historical hourly rates cited in the statute of $60 for in-court and $40 for out-of-court time. 18 U.S.C. § 3006A. Nor does the Court use the CJA hourly rates actually paid in the District of Idaho for the time periods covered in this case like some other circuits do. In *Webb v. Ada County*, 285 F.3d 829, 839 (9th Cir. 2002), the Ninth Circuit held that the PLRA cap is calculated by taking 150% of the CJA hourly rated approved by the Judicial Conference, not the hourly rate actually funded by Congress and paid in the District of Idaho:

> The PLRA expressly provides for payment at the rate "established" under 18 U.S.C. § 3006A. 42 U.S.C. § 1997e(d)(3). The Judicial Conference determined that a rate of $75 per hour for the District of Idaho was justified. Section 1997e(d)(3) makes no distinction between the amount authorized by the Judicial Conference and the amount actually appropriated by

**ORDER 10**

Congress to compensate court-appointed counsel in criminal proceedings. Therefore, the CJA statute delegates the authority to "establish" such rates to the Judicial Conference and to the district courts in their implementation of the CJA. 18 U.S.C. § 3006A. In 2002, the CJA rates by established by the Judicial Conference established the same hourly rate for in and out of court time at $90 per hour. Below is a schedule of the applicable rates for PLRA authorized or approved by the Judicial Conference[2]:

| Year | Actual CJA Rates Paid In District | Judicial Conference Policy Approved Maximum CJA Rates | PLRA Hourly Cap (150%) | Sneed Hourly Rate |
|---|---|---|---|---|
| 2004 | $90 | $122 | $183.00 | $145 |
| 2005 | $90 | $125 | $187.50 | $145 |
| 2006 | $92 | $128 | $192.00 | $165 thru 6/30/06 $170 from 7/1/06 |

Based on these CJA rates, Mr. Sneed would be entitled to a hourly rate of $145 for time prior to January 1, 2006; $165 for hours between January 1, 2006 and June 30, 2006; and $170 for hours between July 1, 2006 and October 2, 2006 since his standard

---

[2]Historical actual CJA rates paid in the District of Idaho can be found at http://jnet.ao.dcn/CJAPanelAttorneys_Defenders/Criminal_Justice_CJA_Rates_Maximums/History_of_Criminal_Justice_CJA_Rates.html. This cite gives a phone number to call for information on other applicable rates. The Court's staff attorney called to request the historical CJA rates "authorized or approved" by the Judicial Conference which are normally higher than the CJA rates actually funded by Congress and are based upon cost of living adjustments determined in January of every year. Some attorneys have relied on testimony before Congress for the rates approved by the Judicial Conference, but these are only estimates at the time the testimony occurs since the final Judicial Conference rates are determined after the COLA numbers come out for the coming year. Therefore, for purposes of the pending motion, the Court will used the Judicial Conference Maximum Approved CJA rates it was provided.

**ORDER  11**

hourly rates of $145 to $170 exceed the statutorily capped hourly rates. Attorney Michael Orr would be compensated at his standard hourly rate of $135 since his standard hourly rate is less than the capped hourly rate in 2004 of $183.00. The Court finds the time of J. Will Varin was minimal and not related to the success of the Plaintiff's claims so this time will not be added by the Court. The paralegal time for formatting and saving deposition transcripts in not the type of work normally recoverable and are not attorney's fees, so the Court will not allow any of the claimed fees for Cori Park in the amount of $147.00.

**4. Reasonable Hours**

The Court begins with a finding that since Plaintiff prevailed on two of five claims he is entitled to 40% of his requested attorneys fees hours. The Court determines it cannot separate the legal hours spent on the unsuccessful claims from those spent on the successful claims based the detailed attorney time sheets submitted. However, the Court has reviewed the descriptions of time requested and finds the time expended on the responses to the motion for protective order and motion for partial summary judgment to be excessive. The Court totaled the time on these two motions to be 122 hours and the Court finds a 50% reduction is appropriate based on the lack of complexity of such motions and the responses filed with the Court. This is not to say that Plaintiff's counsel was in any way "padding" his time. Rather, the Court finds that the number of hours detailed indicates Plaintiff's counsel was doing research to get up to speed on the prisoner civil rights issues and this involved additional time because the law firm does not

**ORDER 12**

normally handle prisoner civil rights actions.  The Court finds the Defendants should not have to pay for the extra time Plaintiff's counsel needed to get up to speed in this matter.  The Court will reduce the total number of Mr. Sneed's requested hours between July 1 and August 11, 2006 by 61 hours and also by the 2.3 hours for duplicative time at a deposition conducted by Mr. Orr on December 2, 2004.

In applying the *Kerr* factors, the Court finds a smaller percentage than 40% on overall hours allowed may be justified in this case since the claims presented were not overly complex, the Court granted *sua sponte* relief in Plaintiff's favor on the two injunctive claims, Plaintiff was not successful on his claims for compensatory damages, only injunctive relief, and the nature of the relief granted was an increase in beard length from one-half inch to one inch for religious reasons and the making available for purchase medicinal herbs at the commissary.

These factors in favor of reducing the applicable percentage are balanced against the Court's finding that the time spent preparing the attorneys' fees motion is properly included even though the amount of hours is being reduced.  *See Thompson v. Gomez,* 45 F.3d 1365 (9th Cir. 1995).  After a successful declaratory ruling on the two claims, Plaintiff's counsel was able to negotiate a settlement agreement on the two claims and avoid the expense of a lengthy litigation.  The "undesirability" of the case from the viewpoint of most attorneys' perspective made it difficult for the Plaintiff to find counsel on his own.  The Court requested a local law firm represent the Plaintiff in a *pro bono* status which kept counsel from receiving their customary hourly rates from other clients.

**ORDER  13**

From the date the Court ruled on the dispositive motions on August 11, 2006, until the end of submitted hours on October 2, 2006, it appears the hours should generally be recoverable as this work is related to the successful claims (even though it also includes a clarification that the sacred fire claim was not allowed once it was determined Plaintiff wanted to conduct the sacred fire ceremony in his cell and Plaintiff trying to amend the binding settlement on August 23, 2006). The Court also finds the representation of this particular plaintiff required frequent communications. Finally, there as been a substantial delay in the Plaintiff's estate receiving his award of fees.

The Court finds in considering the totality of the circumstances of this litigation, the claims Plaintiff prevailed upon, and the *Kerr* factors the Plaintiffs should recover 40% of the claimed hours less the 63.3 hours subtracted due to excessive time previously explained by the Court. This leaves a total of 238.16 hours for the representation of Plaintiff on the prevailing claims[3] which the Court considers reasonable.

The Court notes that hours after October 2, 2006 are not included in the time sheets submitted by Plaintiff's counsel. Mr. Sneed apparently left the Givens Pursley law firm and attorneys David Lombari and Tom Dvorak substituted in as counsel for Plaintiff. Plaintiff's counsel did not request compensation for the hours related to additional briefing and a settlement conference after Mr. Sneed left the lawfirm, so no additional

---

[3] Mr. Sneed claims 658.70 hours in total. The Court reduced the number of hours by 63.3 hours (see 61 hours on certain motions and footnote 4) and only allowed 40% of the allowed time calculated at 595.40 * 40% for 238.16 hours as a reasonable amount of hours based on results obtained in this particular case.

**ORDER  14**

compensation for the time of Mr. Dvorak or Mr. Lombari will be awarded. The Court will deem this time *pro bono* work by these two attorneys.

**Chart of Hours and Rates Awarded:**

| Attorney | Hourly Rate | Hours Allowed | Total Fees |
|---|---|---|---|
| Sneed | $145 | 36.68 hours (91.7 hours[4] 1/15/04 - 12/31/2005 * 40%) | = $5,318.60 |
| | $165 | 104.16 hours (260.40 hours 1/1/06 - 6/30/06 * 40%) | = $17,186.40 |
| | $170 | 97.32 hours (304.3 hours less 61 hours on motion for protective order and motion for summary judgment deemed excessive for hours 7/1/06 - 10/2/06 * 40%) | = $16,544.40 |
| Orr | $135 | 21.6 hours (54 hours 2/21/04-2/5/05 * 40%) | = $2,916.00 |
| | | **Total Attorneys Fees** | **$41,965.40** |

---

[4]The Court did deduct 2.3 hours of Mr. Sneed's time as duplication when he attended the deposition conducted by Mr. Orr on December 2, 2004.

**ORDER 15**

## Bill of Costs

Defendants filed a request for costs in the amount of $3,293.63 claiming they were the prevailing party. *Docket No. 125.* As discussed above, the Court finds both sides were arguably prevailing parties. While it is true Plaintiff only prevailed on two of the five claims, the two claims were significant claims. The Court finds that in this particular case, the Defendants are not entitled to costs since they did not prevail on all claims presented by Plaintiff. Defendants request for costs is denied.

## Order

Being fully advised in the premises, the Court hereby orders that Plaintiff's Motion for Attorney's fees (Docket No. 126) is GRANTED IN PART AND DENIED IN PART consistent with this Order. Plaintiff is awarded **$41,965.40** in attorneys' fees. Defendants' Bill of Costs (*Docket No. 125*) is DENIED.

DATED: **November 4, 2010**

Honorable Edward J. Lodge
U. S. District Judge

**ORDER  16**